In re MOORHEAD KNITTING CO.

No. 10280.

District Court, M. D. Pennsylvania.

Nov. 9, 1944.

94

See also, D.C., 58 F.Supp. 88.

Clarence P. Wynne, of Scranton, Pa., Trustee.

Harry S. Knight, of Sunbury, Pa., for Trustee.

Arthur Richenthal, of New York City, for S.E.C.

John W. Crolly, of Scranton, Pa., Special Master.

Robert T. Fox, of Harrisburg, Pa., Successor Trustee.

F. Brewster Wickersham and Oscar G. Wickersham, both of Harrisburg, Pa., for Mtg. Bondholders Protective Comm.

W. E. Shissler and Robert Rosenberg, both of Harrisburg, Pa., John E. Myers, of Carlisle, Pa., Russel B. Updegraff, of New Cumberland, Pa., and Robert Dorsey, of Scranton, Pa., for various security holders.

Paul G. Smith, of Harrisburg, Pa., for debtor corporation.

Samuel Wilson, of Harrisburg, Pa., for Debenture Holders Protective Comm.

Paul L. Hutchison, of Harrisburg, Pa., for Preferred Stockholders Protective Committee.

Carpenter & Carpenter, of Sunbury, Pa., for Trustee.

John C. Herman, per se.

JOHNSON, District Judge.

Petitions for allowances of fees and expenses having been filed in the above matter a hearing was held at Harrisburg, Pennsylvania, on January 13 and 14, 1944, at which time testimony was offered in support of the various claims presented. The Official Court Reporter took notes of the testimony and the transcript thereof is now before the Court. At the conclusion of the hearing, it was ordered by this Court that an audit of the accounts of Clarence P. Wynne, as Trustee, be prepared by Main and Company, Certified Public Accountants of Harrisburg, Pennsylvania. That audit was formally authorized by a written Order of Court dated April 12, 1944, and was subsequently prepared and filed of record in these proceedings.

The Final Account of Clarence P. Wynne, Trustee, was also prepared, and on April 10, 1944, was filed in this court. To this account exceptions were filed by the Securities and Exchange Commission; by F. Brewster Wickersham, Esquire, on behalf of the Bondholders' Protective Committee, and by Samuel Wilson, Esquire, on behalf of the Debenture Holders' Protective Committee. A hearing was held at Harrisburg, Pennsylvania, upon these exceptions on September 28 and 29, 1944, at which time the Securities and Exchange Commission offered testimony in support of its exceptions filed and the Trustee, Wynne, testified in support of his accounting. At the conclusion of the testimony, F. Brewster Wickersham, Esquire, declared of record on behalf of his committee that he was fully satisfied with the explanation given by the former Trustee, Clarence P. Wynne, in answer to the exceptions filed, and would not press his exceptions. Samuel Wilson, Esquire, by a letter filed in the record of these proceedings, also declared that in view of the complete explanation given by Mr. Wynne covering matters to which exceptions had been taken, the Debenture Holders' Protective Committee withdrew its exceptions theretofore filed. The action of this Court in dismissing the exceptions to the Final Account of Clarence P. Wynne, as Trustee of the debtor corporation, appears of record in this matter by separate opinion and order.

The present proceedings were for the purpose of the reorganization of a large corporation. Consideration of the size of the estate involved will be of value in determining the amount of work necessarily performed in the reorganization proceedings. The appointment of Clarence P.

Wynne, as Trustee, was made in June of 1941. As of that time the amount of cash on hand was $5654.90. In the operation and liquidation of the debtor's estate, from accounts receivable, and sales of merchandise, sales of raw material, machinery, personal property, real estate, recovery of debts, rentals received, sale of trade-marks, tax and insurance refunds, dividends from life insurance, proceeds from life insurance and loan accounts, receipts amounting to $601,837.95 were accounted for. To this total must be added the appraised value of the real estate in Harrisburg, Pennsylvania, amounting to $285,000 and an additional asset of $64,000 representing the cash surrender value of life insurance still held by the present trustee. The total of the above figures is $950,837.95. Cash on hand is in the amount of $137,950.47 now on deposit; and there is a present income from rental of the Harrisburg real estate amounting to $33,100 per year. These figures reveal that this estate involved approximately one million dollars.

The Securities and Exchange Commission has filed Recommendations re Applications for Final Allowances and Amended Recommendations re Applications for Final Allowances, in which the Commission makes suggestions to this Court of the amounts to be allowed each applicant.

From the information heretofore possessed by this Court concerning the amount of services performed by the applicants for allowances and the value of those services to the debtor, coupled with the information gained by hearing the testimony offered in support of the petitions filed, as well as the testimony taken on the exceptions to Clarence P. Wynne's Final Account, this Court makes the following findings on the petitions filed:

Clarence P. Wynne was appointed Trustee of Moorhead Knitting Company on June 21, 1941. As such Trustee he was responsible for the careful and proper administration of an estate of great value. He was responsible for the operation of the plant; for the purchasing and processing of raw material; for the many accounts of the debtor company, its payrolls and sales. Upon him, in the first instance, rested the duty of ascertaining the number of creditors and the amounts of their claims, the bondholders, debenture holders and stockholders, together with the amount represented by each class thereof; the assets and liabilities of the debtor had to be de-termined, classified and segregated, and reports thereof made to court. When it was decided that business operation of the debtor was to be discontinued, it was the duty of the Trustee to provide for the sale of the machinery, the raw materials on hand, the trade-marks and all other personal property, and then to dispose of the real estate. The Trustee at once proceeded to negotiate for the sale of the real estate which he had meanwhile rented so that it produced a substantial income. The Trustee, after much effort, was able to secure higher prices for several parcels of the debtor's real estate than had been considered possible.

Upon the Trustee also devolved the readjustment of the debtor's indebtedness consisting of mortgage and bank loans. Meanwhile his work in adjusting unsecured claims resulted in a saving of $4,000. He also undertook the successful settlement of Federal and State tax claims against the debtor.

On June 15, 1942, he filed a plan of reorganization. After many conferences with the various parties in interest, and after hearings thereon, a series of adjustments resulted in the Revised Plan of Reorganization of November 18, 1942. That plan was also later revised to January 1, 1943, and later amended on October 16, 1943. The Trustee's participation in the plans of reorganization involved a great amount of work.

The Trustee, for a time, spent three or four days a week in Harrisburg until the leasing of the large Harrisburg building to the United States Army deprived him of the office space he had been using, when his office was then transferred to Scranton. The transfer of his office to Scranton, where the Trustee resided, relieved the estate from that time on of a large amount of travel expense.

The Trustee held many conferences with his attorneys and attorneys for various creditors, the attorneys for the Bondholders' Protective Committee; the attorney for the Debenture Holders' Protective Committee; the attorney for the Preferred Stockholders' Protective Committee, and the attorneys for the Securities and Exchange Commission. A large number of conferences was also held by the Trustee with State and Federal Tax Authorities, with the Special Master and with this Court.

In the performance of his duties the record shows that the Trustee traveled over 13,000 miles. His work extended over a period of three years.

■ Mr. Wynne originally filed a petition for an allowance of fees in which he requested $25,000, in addition to the sum of $8400 which had been paid to him as partial compensation during the progress of the reorganization. He later, by amendment, reduced his request to $18,000, in addition to the $8400 which had been paid to him as partial compensation during the progress of the reorganization. From $18,000 would be deducted $4,100 heretofore withdrawn as fees by Mr. Wynne leaving a balance of $13,900 which he now requests be awarded him out of funds on hand. After due consideration of this matter this Court makes the following award: To Clarence P. Wynne, Trustee, is awarded the sum of $9,000 as an allowance of fees, in addition to the sum of $8400 which has been paid to him in the form of ad interim allowances. From the award of $9,000 is to be deducted $4,100 heretofore withdrawn as fees by Mr. Wynne leaving the amount of $4,900. From that amount is to be deducted also the sum of $75 in correction of an admitted error in Mr. Wynne's final account wherein he listed a duplication of one of the expense items. This leaves a balance of $4,825 to be paid to Mr. Wynne out of the funds now on hand.

The ad interim allowances heretofore made were granted for the purpose of partially compensating the Trustee for services rendered as the reorganization proceeding progressed. It was not intended by this Court that an appointment as Trustee would be given in these proceedings to an inexperienced individual for the lowest possible compensation. Such an appointment, if made, would undoubtedly result in the highest final cost to an estate. It was intended by this Court to appoint as Trustee one who had previously demonstrated in similar proceedings an ability beyond question to overcome the many difficulties and problems expected to arise in the course of the reorganization of a large corporation and to conduct the proceedings through the many conflicts of individual opinion and personal interests toward the formation of plan of reorganization acceptable to the many parties involved and, finally, to bring that plan to a fruitful conclusion. It was also intended by this Court that such a person, upon selection and appointment, would be compensated in accordance with his ability and his accomplishments in these proceedings.

At the beginning of the Trustee's period of service this Court made an order of allowance, ad interim, in the amount of $500 per month. It was not to be expected that a Trustee would be able to carry on, dependent solely upon his own resources, for a period of several years, awaiting, meanwhile, a final order of allowance for his compensation. Of his own volition, however, Mr. Wynne, the Trustee, in presenting his subsequent petitions for ad interim allowances, voluntarily reduced his request, in agreement with the Securities and Exchange Commission, to a monthly figure of $300, with the understanding that the difference of $200 per month would later inure to his credit. This action reduced the operating expenses of the trusteeship at a time when the exercise of economy was most desirable, as the debtor corporation was then in operation and was losing money.

Mr. Wynne's appointment as Trustee in these proceedings was made through the knowledge of this Court of his ability and accomplishments in other proceedings in reorganization. As to the manner of Mr. Wynne's conduct of his trusteeship the Court cites the commendation of Robert T. Fox, Esquire, the Successor Trustee, after the resignation of Mr. Wynne. Mr. Fox stated in his first report to this Court that he "examined the files in order to have a better understanding of the character of the work performed by Mr. Wynne," and from that examination believed "the matters in the hands of the prior Trustee were accomplished with sound judgment and discretion; that he performed his duties in such a manner as to inure to the benefit of the creditors and stockholders, which made the plan of reorganization possible." In this commendatory judgment this Court concurs.

Attorney John W. Crolly was appointed as Special Master on June 24, 1941. His early work in this case required him to receive, acknowledge and docket 300 proofs of claims. Upon these claims he wrote many letters and had many conferences before they were finally adjusted and approved.

It was also the duty of the Special Master to receive, acknowledge, file and docket many petitions, objections, exceptions, transcripts of testimony, lists of creditors,

bondholders, debenture note holders and stockholders, and to send out to all parties in interest many notices of hearings, objections filed and petitions for various proceedings. It was his duty to preside at the many hearings, held at different stages of the reorganization. In the course thereof, he prepared and submitted to this Court many reports on the progress of the matters before him, and briefs of law on questions involved.

The Special Master held ten hearings at Harrisburg, Pennsylvania, on exceptions to claims of creditors, reclamation proceedings, and objections, exceptions and amendments to the plans of reorganization proposed and filed. Before some hearings it was necessary for the Special Master to prepare and mail 600 notices.

He held many conferences with the Trustee, the attorneys for the Trustee, the attorneys for the protective committees, attorneys for claimants and creditors, as well as with the attorneys for the Securities and Exchange Commission.

He prepared his own plan of reorganization when it became apparent that the plan then under consideration would not receive approval.

In the performance of his duties the record reveals that he spent many hours on difficult work and traveled 1890 miles in the course thereof.

To John W. Crolly, Special Master, is awarded the sum of $9,340 of which $3,840 has heretofore been granted and paid, leaving a balance of $5,500 to be paid from funds now on hand. In addition thereto, the Special Master is further awarded the sum of $599.50 for repayment of disbursements expended in the discharge of his official duties, divided as follows: Traveling Expense in the amount of $94.50 computed at the rate of $.05 per mile; hotel expenses and meals in the amount of $55; printing, postage, and office supplies in the amount of $50; part time stenographer and clerk hire in the amount of $240; a proportion of office rental is allowed in the amount of $160.

Attorney Crolly, as Special Master, performed the arduous duties of his position faithfully, and competently, and thus contributed his full share to the successful conclusion of this reorganization.

Harry S. Knight, Esquire, and Carpenter and Carpenter, Attorneys at Law, both of Sunbury, Pennsylvania, were appointed as attorneys for the Trustee on July 7, 1941.

During the course of this reorganization and in the performance of the legal work involved the record shows that they filed over seventy petitions, over fifteen motions and other legal papers of various kinds. It became necessary for them to make over twenty-two trips to Harrisburg in addition to those made to Lewisburg and to Scranton.

The attorneys for the Trustee prepared the necessary corporate stock tax reports, contracts for the revision of life insurance held by the debtor, various financial statements, warehousing agreements, factoring agreements, petitions for the sale of personal property and for the sale of real estate, contracts, deeds, bills of sale, assignments, objections, exceptions, reports to creditors and reports to this Court. All of this necessitated hours spent in study and research in addition to the time spent in the preparation of legal papers and briefs.

Counsel was secured in New York State to defend attachment proceedings there instituted against the funds of the debtor corporation. After the preparation of a defense the matter was brought to a conclusion in favor of the debtor.

It was necessary for counsel to participate in many conferences at the business place of the debtor in Harrisburg with regard to the drawing of yarn and raw material contracts, social security taxes, land and corporate taxes and many other matters connected with business operations.

Counsel for the Trustee successfully defended all reclamation proceedings brought against the debtor corporation for raw materials on hand. Counsel also succeeded in securing the release of various liens of processors of raw materials.

There was a great amount of work done on condemnation proceedings, bond retirement, reduction of mortgages, retirement of bank loans, and readjustment of life insurance contracts.

In addition thereto it was necessary to secure settlement of Federal and State Capital Stock Taxes and Social Security Taxes, which was successfully done.

The drafting and presentation of objections to creditors' claims consumed a large amount of time, as did the securing of an assignment of a manufacturing number or

license from the Federal Trade Commission.

In addition to all the work above recited the attorneys for the Trustee devoted a large amount of time to the plans presented and to the revision and amendment thereof; to the sales held at which both real and personal property were sold and auctioned, and later prepared and presented petitions for confirmation of these sales.

Counsel for the Trustee attended every hearing held by the Special Master and by this Court. Over two thousand letters were written in the course of the work outlined and more than 4,000 miles were traveled.

To Harry S. Knight, Esquire, and Carpenter and Carpenter, Attorneys at Law, attorneys for the Trustee, is awarded a single fee of $10,000 to be divided equally between them. In this important reorganization proceeding it was the expressed purpose of this Court to provide the Trustee with experienced counsel from either or both whom he could seek legal advice and guidance in the performance of a highly involved task. This was done and the results achieved reflect the wisdom of the decision then made. The success of the Trustee's conduct of this corporate reorganization is due in no small measure to the competency of the attorneys selected to assist and guide him. The appointment of counsel of little experience in matters of reorganization might result in lower expense for legal services but would, beyond doubt, result in greater expense to the estate through prolonged litigation and delay in reaching a final and successful conclusion.

A further award is made to Harry S. Knight, Esquire, as repayment of expenditures made in the performance of the duties attendant upon his appointment, in the following amounts: $214.92 for telephone and telegraph charges; $.45 for expressage and the sum of $164.80 for hotel expense, meals, and travel expense at the rate of $.05 per mile, making a total of disbursements of $380.17. A further award is made to Carpenter and Carpenter, Attorneys, as repayment of expenditures made in the amount of $69.76.

F. Brewster Wickersham with Thomas R. Wickersham and Oscar G. Wickersham, of Wickersham & Wickersham, Attorneys at Law, in Harrisburg, Pennsylvania, were retained on September 26, 1941, as counsel for the Bondholders' Protective Committee. That committee was formed for the protection of the holders of bonds issued to a total of $174,500.

The amount of work involved was tremendous and necessitated many and frequent conferences with the members of the committee. One of the first issues that arose was the advisability of the issuance of Trustee's Certificates for the purpose of financing the business operations of the debtor corporation. The Bondholders' Committee was opposed to the further operation of the business and took the position that immediate liquidation was most desirable. In furtherance of that position the attorneys for the committee undertook the work of preparing and prosecuting an appeal to the Circuit Court of Appeals. The inability to secure raw materials in order to continue business operations, arising from sudden shortages due to war conditions, later compelled the cessation of operations and the consequent abandonment of the appeal.

A large amount of work was performed upon legal questions arising in the sale of the personal property of the debtor. There were reclamation proceedings, disputes as to ownership, valuations, auctions, and sales requiring almost constant attention. In addition this work required frequent conferences with the members of the committee and also with counsel for other groups of creditors and security holders as well as with counsel for the Trustee, the Trustee himself and the Special Master. A voluminous correspondence was the outgrowth of this class of work.

The lease and sale of various parcels of real estate likewise resulted in a large amount of work. The securing of bidders and the later sale of the Mechanicsburg and Chambersburg real estate necessitated further legal work while the more complicated disposal of the Harrisburg real property entailed many conferences with Army Officers and representatives, opposition to proposed leasing of the real estate and condemnation proceedings instituted by the government, and necessitated the preparation of answers and objections and frequent appearances in court at hearings on the matters involved therein. Some of the many conferences held in connection with these matters necessitated travel to Philadelphia, Scranton and Lewisburg, Pennsylvania.

The attorneys for the Bondholders' Protective Committee prepared and submitted a plan of reorganization, which, after many conferences and hearings, became, after revision and amendment, the basis for the plan finally adopted and which resulted in the successful conclusion of the reorganization proceeding. Before the final plan was adopted it became necessary for these attorneys to study and revise other plans under consideration and to prepare and file the various objections which the position of their clients required. This work also necessitated the preparation of briefs of law upon the questions involved and appearances in court at hearings held to determine those questions.

The transcript of testimony shows that the records of the attorneys for the Bondholders' Protective Committee reveal almost daily attention to the work involved in this reorganization. This work necessitated constant close attention to the progress of every phase of these proceedings and required a great amount of correspondence as well as briefs of law, motions, objections, exceptions, answers, and other legal pleadings, in addition to attendances at many conferences and appearances at many hearings before the Special Master and this Court.

To F. Brewster Wickersham and the firm of Wickersham and Wickersham, Attorneys at Law, attorneys for the Bondholders' Protective Committee, is awarded the sum of $4,000 as an allowance of fees, and a further award of $191.33 is hereby made as a repayment of disbursements incurred in the performance of the work accomplished.

To the Bondholders' Protective Committee is awarded the sum of $400 to be divided equally between Levi Myers, Paul Brockley, Wayne Freysinger and George L. Wingeard. The fifth member of the committee, Dr. J. Horace McFarland, has heretofore filed of record in this proceeding his disclaimer of any share in this award.

This award is made as compensation for the work of this committee in protection of the various bondholders and in the advancement of the estate.

A further award is made to the Bondholders' Protective Committee in the amount of $425.19 as repayment of expenditures made in performance of its duties.

Samuel Wilson, Esquire, of Harrisburg, Pennsylvania, was retained on July 3, 1941, as attorney for the Debenture Holders' Protective Committee which represented the holders of an issue of debenture bonds amounting to $65,300. In behalf of his committee and in furtherance of the interests of all debenture holders, Mr. Wilson had many conferences with the members of that committee as well as with the Trustee, the Special Master, the attorneys representing the other protective committees, attorneys for creditors and the attorneys representing the Securities and Exchange Commission. Mr. Wilson attended many hearings held by the Special Master and by this Court, participating therein for the protection of the debenture holders in matters pertaining to claims of creditors, proceedings relating to the disposition of personal property; the lease and sale of real estate, the condemnation of the Harrisburg real estate and the final leasing of that real estate to the United States Army. His services were also of value to the estate in his work in securing bidders for both real and personal property. Mr. Wilson participated in the work done on the plans of reorganization which were in progress at various times and in the revisions and amendments thereof. He made many examinations of the law in preparing briefs in support of contentions that would not only protect his committee but would assist in the progress of the administration of this estate.

To Samuel Wilson, attorney for the Debenture Holders' Protective Committee, is awarded the sum of $2,000 as compensation for his work performed in representing his committee in these proceedings, plus the sum of $65.43 as a repayment of funds disbursed by him in the performance of his duties.

To the members of the Debenture Holders' Protective Committee is awarded the sum of $250, to be divided equally among the five members thereof, to wit: The sum of $50 each to D. H. Sprenkle, Charles Kennedy, Joseph Seltzer, Howard D. Shadle, and Minnie E. Seitz, for their work performed in behalf of the class of investors represented by their committee.

Attorney Paul L. Hutchison was retained on July 21, 1942, to represent the Preferred Stockholders' Protective Committee. Mr. Hutchison spent a large amount of time in many conferences with

the members of his committee and with the attorneys representing the other protective committees, the Trustee, the Special Master, and the attorneys for the Securities and Exchange Commission. He assisted in the work attendant upon the drawing, revision and amendment of the plan of reorganization. He participated in hearings held at Harrisburg, Pennsylvania, before the Special Master and the Court relative to proceedings in connection with the sale of personal property and the sale, condemnation and leasing of real property. The record shows that Mr. Hutchison participated in 35 conferences and in 10 hearings and that he spent many hours in behalf of his committee and for the protection of the entire group of preferred stockholders in order to ascertain that any plan of reorganization finally adopted and approved would be fair and just to all parties involved.

■ To Paul L. Hutchison, Esquire, attorney for the Preferred Stockholders' Protective Committee, is awarded the sum of $500 as compensation for his work performed in representing his committee in these proceedings since July 21, 1942.

The only claim presented by the Preferred Stockholders' Protective Committee is that of the secretary of the committee, Mr. Charles R. Neff. Mr. Neff served since the inception of the committee and upon him devolved the duty of carrying on the various activities of the committee after its formation, for which he was largely responsible. Mr. Neff did a large amount of traveling in order to confer with various stockholders and in addition thereto for a long period of time he held a conference with Attorney Hutchison before and after each hearing before the Special Master of this Court.

■ To Charles R. Neff, Secretary of the Preferred Stockholders' Committee, is awarded the sum of $100 as payment for the services rendered his committee, plus the sum of $171.10 as repayment of disbursements made in the performance of his duties.

Paul G. Smith, Esquire, served as the attorney for the debtor corporation. In that capacity he prepared and filed the petition for reorganization of that corporation under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Thereafter he participated in behalf of his client in court proceedings concerning objections made to the petition for reorganization on the ground that it had not been filed in good faith. Mr. Smith appeared in this court four times and presented testimony to substantiate the good faith of his client. The work that he did therein resulted in an Order of Court on October 16, 1941, sustaining the petition as filed.

■ To Paul G. Smith, Esquire, attorney for the Debtor, is awarded the sum of $250. No exceptions were filed to his petition for fees, and the amount is allowed as fair and reasonable.

■ Having taken testimony on the petition of Clarence P. Wynne for a final allowance and for approval of monies withdrawn and expended, as Trustee, in behalf of the debtor corporation, and having further taken testimony on the exceptions filed to Mr. Wynne's Final Account as Trustee, and having given this matter careful consideration, this Court directs that credit be allowed Clarence P. Wynne for withdrawals of expenses on account of Moorhead Knitting Company, in the amount of $4,882.59 as shown in his Final Account heretofore filed of record in these proceedings.

The allowances requested by the various claimants at the time the petitions for allowances were filed amounted to $99,837.36. At the hearing at which the parties were present, the Court stated that in its opinion the amount requested was excessive. A time was fixed by the Court within which amended petitions could be filed by those willing to reduce the allowances requested. That action resulted in several of the parties filing amended petitions so that the total amount requested was reduced to $84,695.86. The action here taken by this Court further reduces the allowances to the sum of $46,067.48, of which $16,340 has been paid heretofore, leaving a balance of $29,727.48 to be paid and distributed by the present trustee out of funds now on hand, in accordance and compliance with this order.

The Successor Trustee is directed to ascertain that the proper affidavits are filed by the various members of committees receiving allowances under this Order of Court before payment is made.